UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

RICHARD D. PHILLIPS,

        Plaintiff,

        v.                                                                Case No. 14-C-0007

CAROLYN W. COLVIN,

        Defendant.

DECISION AND ORDER REVERSING DECISION OF THE COMMISSIONER
AND AWARDING BENEFITS

Richard Phillips appeals the denial of his application for Supplemental Security Income disability insurance benefits (DIB). The road to this point has been a long one. Phillips filed for DIB on February 8, 2002. An Administrative Law Judge (ALJ) conducted a hearing on July 7, 2005, and denied Phillips's claim on July 25, 2005. The agency's Appeals Council declined review and thereafter Phillips sought review in federal court in this district (case number 06-C-272). The Commissioner agreed to a remand, so Magistrate Judge William E. Callahan remanded the case on August 1, 2006. A second ALJ held a hearing on December 21, 2007, and denied Phillips's claim on February 22, 2008. Phillips again sought review in this district (case number 09-C-547). The case was remanded under "sentence six" because the record was incomplete, but, subsequently it returned to federal court. District Judge J.P. Stadtmueller remanded the case again on August 10, 2011, (under "sentence four"), identifying several errors. A third ALJ held a hearing on August 30, 2013, and denied Phillips's claim once more, by decision dated September 6, 2013. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Phillips filed the present case to challenge the third ALJ's decision.

During all three hearings and on this appeal Phillips has been represented by counsel. At the second hearing, Phillips and vocational expert (VE) Michele Albers testified and at the third, Phillips and VE Margaret Ford testified.

Phillips seeks judicial review pursuant to 42 U.S.C. § 405(g), claiming disability beginning April 15, 2000. Because Phillips was awarded benefits as of December 28, 2009, pursuant to a subsequent application, the parties agree that a closed period between April 15, 2000, and December 27, 2009, is at issue in this matter.[1] (*See* Tr. 1051.)

Under § 405(g), the findings of the Commissioner as to any fact shall be conclusive if supported by substantial evidence. The Commissioner's final decision may be overturned only if it lacks support by substantial evidence, is grounded in legal error, or is too poorly articulated to permit meaningful review. *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 699 (7th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000). The court views the record as a whole but does not reweigh the evidence or substitute its judgment for that of the ALJ. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). The ALJ is not required to address every piece of evidence or testimony presented, but must provide a "logical bridge" between the evidence and his or her conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Evidence favoring as well as disfavoring the claimant must be examined by the ALJ, and the ALJ's decision should reflect that examination. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).

---

[1] Submissions by the parties suggest that Phillips's award of benefits in 2009 was related to a mental impairment. (*See* Tr. 751.)

2

The Social Security Administration has adopted a sequential five-step process for determining whether a claimant is entitled to DIB. 20 C.F.R. §§ 404.1520. Familiarity with the five-step process is presumed. The first ALJ concluded Phillips's case at step four. The second and the third ALJs found against Phillips at step five.

Phillips does not challenge any of the latter ALJ's analysis through step four, including the determination of residual functional capacity (RFC). Therefore, the ALJ's decision is affirmed as to all of those steps. Phillips's sole challenge is to the ALJ's determination at step five, based on the testimony of VE Ford, that work for Phillips existed in significant numbers in the national economy during the period at issue.

### THIRD HEARING AND DECISION

At the RFC stage, the ALJ determined that Phillips could perform unskilled light work with several restrictions, including work involving

> no more than minimal use of the non-dominant (left) upper extremity: that is, it can be used for occasional reaching and handling while assisting the right (dominant) upper extremity with balancing or with stabilizing objects, but with no overhead reaching, pushing, pulling, fingering, or more than occasional reaching with the non-dominant upper extremity.

(Tr. 381.) The record showed that Phillips had injured his left arm in a motorcycle accident in July 1978; medical records acknowledged subsequent atrophy and other effects from the injury, resulting in minimal use of the left arm. (Tr. 382-83.) Phillips testified at the third hearing that he could not reach with the left arm and he used the right hand to lift and place his left arm into position. (Tr. 1069-70.) Phillips's limitations eroded the unskilled light occupational base.

At the third hearing, the ALJ had asked VE Ford about jobs available to a hypothetical person of Phillips's age, education, and work experience, with the same

3

restrictions on the left extremity as he subsequently adopted in his RFC. VE Ford identified four positions: usher, sandwich-board carrier, bakery worker conveyor line, and ticket taker. (Tr. 1064.) When questioned about whether the Dictionary of Occupational Titles (DOT) required more handling or fingering by the left extremity, VE Ford said that her testimony differed from the DOT because in her opinion the positions of usher, sandwich-board carrier, and ticket taker could be done one-handed and the bakery-worker-conveyor-line position did not require fingering, as long as the left hand could be used as "an assist." (Tr. 1065-66.) She stated that the DOT requires "occasional fingering" for the usher, sandwich-board carrier, and ticket-taker positions but that "[i]n reality, the job can be done, one-handed with the left used as an assist," meaning that the fingering required could be done one-handed. (Tr. 1066.) VE Ford based this opinion and any inconsistencies with the DOT on her twenty-seven years as a vocational expert placing individuals in positions. (*Id.* at 1066, 1069) VE Ford testified that such jobs would remain available to someone limited to work involving no pushing or pulling with the left upper extremity; no more than simple, routine and repetitive tasks; no fast-paced production requirements; only simple decisions; and few workplace changes. (Tr. 1066-68.)

Phillips's attorney then questioned VE Ford as follows regarding her opinion that a person who cannot reach the left arm independently of the right (but instead needs the right hand to place the left arm in position) could still do the four jobs:

Q     Okay, so does the, does that differ from the DOT? Does the DOT require reaching in these jobs?

A     As I indicated before, the usher does require occasional reaching –

Q     Okay.

4

> A – the sandwich board carrier does require occasional reaching, baker[y] worker does require occasional reaching, ticket taker does require frequent reaching. That's what the DOT indicates.
>
> Q Okay. So, what are you basing your testimony on, then?
>
> A My 27 years' experience as a vocational expert, placing people . . . .

(Tr. 1076.) When asked if she had any studies that showed that a person could do these jobs without any reaching or fingering with one arm, VE Ford pointed to an article by several authors titled "employer validation of jobs performed with one arm" in the "Journal of Forensics, vocational analysis; 11(2), . . . pages 37 through 48." (Tr. 1077.) Phillips's attorney asked for a copy of the article. (*Id.*) VE Ford referred counsel to the ALJ, who told counsel that he had been given the cite and could "look it up. She gave you the pages." (*Id.*) VE Ford suggested that counsel look for the article at the library or online. (*Id.*) When counsel asked again for the article to be provided to him to ensure he was looking at the same document the VE referenced, the ALJ again told counsel to look it up because VE Ford gave him the cite. (Tr. 1081.) VE Ford then stated that her opinion was based primarily on her twenty-seven years of experience, with some support from the article. (Tr. 1081-82.) Counsel objected to the VE's reliance on experience alone and to the VE's testimony if he was not given the article. (*Id.*)

Additionally, counsel questioned VE Ford regarding whether she had reduced the numbers of jobs available to account for the discrepancy between the DOT and her testimony. She indicated that she had not. (Tr. 1078-79.) Questioning continued:

> Q So, then each of these jobs can be performed, basically what you're saying is the Dictionary of Occupational Titles' definition does not accurately describe the jobs?
>
> A I did not say that.

5

> Q    Okay. So, if the Dictionary of Occupational Titles describes the job, each of these jobs as generally requiring occasional use for reaching and fingering, since your testimony differs, are you saying that each of these jobs, every one of these jobs performed in the national economy is performed differently from how the Dictionary describes them?
>
> A    I did not say that either.
>
> . . . .
>
> Q    Your answer differs from the DOT. Why haven't the numbers been reduced?
>
> A    Because of my experience as a vocational expert, and I use these jobs and they can be done this way. Therefore, I did not reduce the numbers.
>
> Q    So, they can be done this way. Are they all actually done this way?
>
> A    Once again, that's a pretty open-ended question.

(Tr. 1079-80.)

Counsel asked for and was given one week to look up the article and submit a supplement to the ALJ. (Tr. 1083.) One week later, counsel wrote to the ALJ that he had looked online and in the entire Chicago Public Library system (counsel was from Evanston, Illinois) and could not find a copy of the article. (Tr. 750.) Counsel renewed his objection to VE Ford's testimony unless he was given a copy of the article and the article was added to the record. Further, counsel objected to the numbers of jobs given by VE Ford because she did not reduce the total numbers for the inability to reach with the left arm and failed to provided any basis other than her experience for the opinion that each one of the jobs in the country could be performed without use of the left arm. (Tr. 750-51.)

6

In his decision, the ALJ referenced VE Ford's opinion that a person with those limitations

> would have been able to perform the requirements of a variety of representative occupations. As examples, the vocational expert listed: bakery worker (DOT 524.687-022—7,660 light positions in the applicable local economy of Wisconsin, and 224,175 jobs nation-wide); usher (DOT 344.677-014—1,210 light positions in the state, 85,630 nationally); ticket taker (DOT 344.677-101—1,210 light positions in the state, 85,630 nationally); and advertising (sandwich board) worker (DOT 299.687-014—320 light positions in the state, 14,614 nationally).
>
> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is largely consistent with the information contained in the Dictionary of Occupational Titles. However, as explained at the hearing, that testimony also reflected additional standard vocational sources, as well as twenty-seven years of experience related to vocational evaluation.
>
> Based on the testimony of the vocational expert, the undersigned concludes that, considering his age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy during the period at issue.

(Tr. 386-87.)

Phillips contends that this finding was not supported by substantial evidence because VE Ford's testimony was inconsistent with the DOT; Phillips's counsel was denied, in violation of caselaw, a written source on which the VE relied; and the ALJ relied on the VE's testimony without a reliable basis for her opinion. (*See* Doc. 9 at 6.)

In response to Phillips's opening brief in this appeal, the Commissioner submitted an affidavit of Nirnajan Emani, an Assistant Regional Counsel at the agency, stating that he found a reference to the journal article through a Google search and that a copy of the article can be ordered for $10. (Doc. 14, Ex. Emani Decl. at 1-2.)

7

## ANALYSIS

The only issue on appeal is whether the ALJ erroneously relied on VE Ford's testimony that significant jobs existed for Phillips in the national economy, resulting in a flawed step-five determination.

The Federal Rules of Evidence, including Rule 702 concerning expert witnesses, do not apply in social security hearings, which are a hybrid between adversarial and inquisitorial proceedings. *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). Nevertheless, "the idea that experts should use reliable methods . . . plays a role in the administrative process because every decision must be supported by substantial evidence. Evidence is not 'substantial' if vital testimony has been conjured out of whole cloth." *Id.* Thus, a finding based on unreliable VE testimony is not supported by substantial evidence and must be vacated. *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008); *accord Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008); *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004).

Although a VE is entitled to give a "bottom line" concerning number of jobs available in the economy, if the claimant challenges the foundation of the VE's opinions "the data and reasoning underlying that bottom line must be 'available on demand.'" *McKinnie*, 368 F.3d at 911; *accord Donahue*, 279 F.3d at 446. And such data and reasoning "are not 'available on demand' if the claimant must pay for them." *McKinnie*, 368 F.3d at 911. Although the VE need not necessarily provide the full publication if lengthy, the pages or portions on which the VE relies should be offered to the claimant or his attorney. *See Britton*, 521 F.3d at 802-04. Further, the ALJ should give a claimant's attorney who wants

to address data unavailable at the hearing the opportunity to supplement the record after the hearing. *Id.* at 804.

In *McKinnie*, the VE testified that she extrapolated the number of jobs available for a hypothetical clamant from various studies and statistics in combination, but she had not prepared a written report for the hearing and did not bring any reference materials with her. 368 F.3d at 909. The claimant's attorney questioned the extrapolation and asked the VE to supplement the record with documentation of her research and citations to references. The ALJ told the attorney that McKinnie would have to pay the VE for her time to prepare such a report, which the attorney did not do. *Id.* at 909, 911. Afterward, the ALJ relied on the VE's testimony to conclude that McKinnie could perform a significant number of jobs in the economy. *Id.* at 909-10. The Seventh Circuit found that McKinnie did not have to pay the VE to create the report and reversed the ALJ's decision, which relied on the VE's testimony. *Id.* at 911.

Phillips contends that he was entitled to a copy of the journal article cited by the VE at or soon after the hearing. This court agrees. The Commissioner argues that VE Ford did not actually base her jobs figures on the article, but instead relied on her experience, only citing to the journal article when specifically asked by counsel whether any studies supported her opinion. (*See* Tr. 1076-77.) However, when questioned on the influence of the article, VE Ford said she relied "primarily" on her experience but that the article provided "some support and something that [she] can refer to." (Tr. 1082.) Thus, it is apparent that the VE's opinion relied, at least in part, on the journal article. Hence, counsel was entitled to see that supportive article.

9

And though counsel was given a citation for the article, it was not easily obtained, nor was it available at no cost. Even if counsel had conducted the search later conducted by Emani, it would have cost him $10 to obtain the article. Nevertheless, the Commissioner contends that a $10 fee is nominal—not comparable to the cost in *McKinnie* of paying for the VE's time to compile a report. But in the court's view any need to pay for information that impacts Phillips's claim contradicts the Seventh Circuit's direction in *McKinnie* that such data and reasoning "are not 'available on demand' if the claimant must pay for them." 368 F.3d at 911. Similarly, in *Carnaghi v. Astrue*, a case where the ALJ adopted the VE's opinion, Magistrate Judge Arlander Keys found that a $60 fee for obtaining a report on which the VE relied failed to comport with *McKinnie* and *Donahue*. 886 F. Supp. 2d 861, 869 (N.D. Ill. 2012). Also, at step five the Commissioner bears the burden of establishing that jobs exist in significant numbers that the claimant would be able to perform. *Overman*, 546 F.3d at 464; *McKinnie*, 368 F.3d at 911. Hence, the claimant should not be expected to pay for the Commissioner's evidence.

The Commissioner points to *Eboch v. Commissioner of Social Security*, in which a magistrate judge within the Sixth Circuit found that an ALJ had no duty to provide claimant's counsel with what appears to be the same article VE Ford referenced in this case. No. 5:12-CV-649, 2012 WL 7809080, *6 (N.D. Ohio Dec. 13, 2012) (Knepp, M.J.) *adopted*, 2013 WL 1284353 (N.D. Ohio Mar. 27, 2013) (Adams, J.). There, similar to this case, the VE did not rely fully on the article but used it to bolster his conclusion as it comported with his experience, and claimant's counsel was put on notice about the article

10

during the hearing. The VE in that case testified that the study (about one-armed cashier jobs) did not conflict with the DOT but rather supplemented the DOT. *Id.*

But this court is unpersuaded by *Eboch*, from a district court not bound by *Donahue* and *McKinnie*. This court is persuaded that the ALJ here committed an error of law by not providing the article to Phillips's counsel.

Conflict between the VE's testimony and the DOT requires further exploration. Social Security Ruling 00-4p, addressing standards for use of VEs at agency hearings, states that ALJs must (1) identify and obtain a reasonable explanation for any apparent conflicts between occupational evidence provided by a VE and information in the DOT, and (2) explain in the decision how any such conflict was resolved. Any conflict must be resolved before the ALJ can rely on that VE evidence. SSR 00-4p. According to the ruling, the DOT's occupational definitions result from comprehensive studies of how similar jobs are performed in different workplaces. But information about a particular job's requirements or about jobs or occupations not listed in the DOT may be available from other publications, information from employers, or a VE's experience in job placement or career counseling. *Id.* "The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE . . . may be able to provide more specific information about jobs or occupations than the DOT." *Id.* Neither the DOT nor the VE evidence automatically trumps the other; the ALJ must resolve the conflict by determining if the VE's explanation is reasonable. *Id.* An ALJ may accept testimony from a VE that conflicts with the DOT

11

when, "for example, the VE's experience and knowledge in a given situation exceeds that of the DOT's authors." *Overman*, 546 F.3d at 464.

At the third hearing, Phillips's attorney questioned the reliability of VE Ford's conclusions that an individual with Phillips's impairments and limitations could perform the particular jobs (and the number of those jobs available) that VE Ford referenced. Counsel brought to light an inconsistency between the DOT entries, which assumed two-handed fingering for each of the jobs at issue, and VE Ford's testimony that those DOT jobs could be performed one-handed or with the other arm and hand used only to assist. And in response to counsel's question about whether the four jobs could be done essentially one-handed, VE Ford pointed generally to her twenty-seven years of experience in placing individuals in jobs and referenced the article as supporting her opinion.

This inconsistency created a conflict that required resolution by the ALJ. The VE acknowledged that her testimony differed from the DOT because the DOT presumed two-handed fingering. Yet, in his decision, the ALJ called VE Ford's testimony "largely consistent with the information contained in the Dictionary of Occupational Titles." (Tr. 387.) Nevertheless, it is clear that the ALJ resolved any inconsistency by crediting VE Ford's testimony over the DOT. His references to VE Ford's testimony, her twenty-seven years of experience, and "additional standard vocational sources" indicate as much. (Tr. 387.)

But VE Ford's reference to her twenty-seven years of experience and the article did not provide substantial evidence regarding the ALJ's decision regarding number of jobs available. VE Ford confirmed that she did not reduce the numbers because her experience informed her that all of the jobs she noted could be done one-handed with an

12

assist. Thus, her testimony essentially was that each and every available job in these categories could be worked one-handed or one-handed with minimal assistance from the other hand or arm. Though VE Ford disclaimed saying that each and every one of these jobs performed in the national economy is performed differently than as described in the DOT, that disclaimer at best made her testimony unclear. Her adherence to 100% of the numbers indicated the opposite—in her opinion all of these jobs could be performed one-handed or one-handed with minimal assistance from the other hand or arm.

But the DOT descriptions of some of the jobs suggest otherwise. For example, the job of bakery worker, conveyor line, is described as follows:

> Reads production schedule or receives instructions regarding bakery products that require filling and icing. Inspects cakes moving along conveyor to detect defects and *removes defective cakes from conveyor to reject bins*. *Positions cakes on conveyor for application of filling or icing by machine*, observes filling or icing application to ensure uniform coverage, and *places additional cake layers on coated layers*, depending on number of cake layers in product.

(DOT 524.687-022, 1991 WL 674401 (emphasis added).) The emphasized language strongly suggests that some of these jobs require the use of two hands. Similarly, according to the DOT, an usher "[a]ssists patrons at entertainment events to find seats, search for lost articles, and locate facilities, such as restrooms and telephones. Distributes programs to patrons. *Assists other workers to change advertising display*." (DOT 344.677-014, 1991 WL 672865 (emphasis added).) Again, the emphasized language strongly suggests that at least some of the usher jobs require two functioning hands. Looking at these DOT descriptions, VE Ford's adherence to numbers of 100% appears implausible, thus requiring some reliable basis for her opinion.

13

Further, VE Albers, at the second hearing, testified that a person would not be capable of performing any competitive work if he had use of only one arm (Tr. 372), drawing into question the reliability VE Ford's testimony that all of the four positions she cited could be worked one-armed or one-armed with an assist. Moreover, VE Albers did not cite any of these four positions as available to someone like Phillips (she identified possible jobs as cashier in a restaurant, telephone solicitor, courier, and information clerk as long as the individual could use the left arm or hand for balancing or stabilizing assistance). (*See* Tr. 368, 374.) And Judge Stadtmueller, in remanding this case previously, pointed out the need for the ALJ to explore inconsistencies between DOT descriptions requiring reaching, fingering and handling and an opinion that a hypothetical person like Phillips could do them primarily one-handed. (*See* Tr. 400.[2]) Thus, VE Ford needed to provide a reliable basis for her opinion regarding the number of available jobs.

She did not do so. VE Ford gave no specific references to prior clients she had placed in these particular jobs, to personal knowledge or experience regarding one-handed positions, or her knowledge of employers' requirements for these positions. She provided no data or studies (other than citing the one article that was not provided) that backed up her opinion. General experience in placing individuals in jobs over twenty-seven years does not correlate with first hand knowledge that all of these positions can be done one-handed even when the DOT assumes they are done two-handed.

Phillips's case is similar to *Smith v. Astrue*, where Magistrate Judge Martin Ashman in the Northern District of Illinois remanded based on unreliable VE testimony. No. 09-C-

---

[2] Judge Stadmueller found that the ALJ at the second hearing did not properly inquire into whether any inconsistencies with the DOT existed, among other errors. (*See* Tr. 399-402.)

14

2392, 2010 WL 3526655 (N.D. Ill. Sept. 1, 2010). The VE in *Smith* estimated the number of available jobs by starting with Bureau of Labor Statistics data for semi-skilled or light jobs and reducing each figure to five percent of the total number to reach only positions that were unskilled and sedentary. The reductions were based solely on the VE's personal experience. *Id.* at *7, *16. He provided no documents or reports to substantiate his estimate of the number of jobs, such as data on the number of job candidates similar to Smith whom he had handled and the number of jobs available to such candidates. *Id.* at *17. Said Magistrate Judge Ashman:

> The Court recognizes that the VE may well have had the knowledge and expertise necessary to justify his job estimates, but he was required to respond to Plaintiff's challenge with more than a vague reference to his own experience. . . . At a minimum, a vocational expert relying on personal experience, without any citation of objective reports or documents, must provide some specificity concerning the facts, figures, or other data that form the basis of his testimony.

*Id.* at *17. Notwithstanding that Smith had agreed to the VE's expert qualifications, the VE's expertise in the field was not a sufficient ground for finding that all of his testimony was reliable. *Id.* at *18.

In *Holtz v. Astrue*, District Judge Barbara B. Crabb in the Western District of Wisconsin accepted as sufficient a VE's testimony that a subset of three jobs classified as light by the DOT could be performed at the sedentary level when that testimony was based on the VE's personal professional experience of more than twenty years in placing individuals in jobs and contacting employers. No. 07-C-314-C, 2007 WL 5323758, *5 (W.D. Wis. Nov. 8, 2007) ("To the extent that plaintiff is arguing that the expert's experience was not a good reason for accepting her testimony over the *Dictionary*, I

15

disagree."). However, Judge Crabb found unreliable the VE's testimony regarding the number of jobs available to someone with that plaintiff's limitations because the VE did not describe adequately the method she employed:

> [S]he began with estimates provided by the Wisconsin Department of Labor, which provided numbers of jobs corresponding to the various occupations listed in the *Dictionary*. She explained that she reduced those numbers to reflect the number of jobs in each occupational category that could be performed at the sedentary level. What [VE] Harris failed to explain, however, was the method she employed in making this reduction. All she cited was her experience, but that experience does not explain her math.

*Id.* Likewise here, although VE Ford's experience may have been sufficient to support a finding that some of the referenced positions could be done one-handed, she failed to provide a reliable basis for maintaining that 100% of the jobs could be done one-handed. Her experience does not explain her math.

Also, the present case is similar to *Pickett-Piltz v. Astrue*, in which the VE referenced numbers of jobs available that included part-time as well as full-time employment and said she could not break out the part-time positions though they were a "low percentage." No. 09-cv-685-bbc, 2010 WL 2517164, *5 (W.D. Wis. June 18, 2010). Counsel asked whether the VE had done any study to assess the percentage of jobs that were full- or part-time and she testified that she had not. *Id.* at *10. The ALJ denied counsel's request for the data and reasoning that the VE relied on and failed to inquire about the reliability of the VE's conclusions. *Id.* Judge Crabb found that absent supplementation or clarification, the VE's testimony failed to provide substantial evidence to satisfy the Commissioner's burden at step five, requiring remand. *Id.*

16

This very court remanded another similar case, *Reynolds v. Astrue*, No. 09-C-537, 2010 WL 2900356 (E.D. Wis. July 21, 2010), in which the claimant's attorney questioned the VE about how she calculated the number of available jobs. The VE said her numbers came from a combination of the DOT, the Occupational Information Network, personal experience, and research gleaned from a number of resources. But how that combination of sources allowed her to arrive at her numbers was unclear. *Id.* at *4.

In sum, the questioning by Phillips's attorney called into dispute the reliability of VE Ford's opinion that all of the jobs in these four categories were available to an individual limited to use of one arm and hand with only minimal assistance from the other arm or hand. The ALJ based his finding that Phillips could perform other work on the VE's testimony, but that testimony was not sufficient for a reasonable person to accept as adequate to support the ALJ's decision. Consequently, the ALJ's determination at step five was not supported by substantial evidence. *See Overman*, 546 F.3d at 465.

## REMEDY

The ALJ's decision must be reversed thereby raising the question of the appropriate remedy. Phillips seeks an outright award of benefits under *Worzalla v. Barnhart*, 311 F. Supp. 2d 782 (E.D. Wis. 2004). In response, the Commissioner argues that a remand for another hearing is more appropriate.

In *Worzalla*, District Judge Lynn Adelman found that an outright award of benefits was appropriate (1) if the record overwhelming supports a finding of disability, or (2) if "the delay involved in repeated remands has become unconscionable, or the agency has displayed obduracy in complying with the law as set down by the court," 311 F. Supp. 2d

17

at 800. *Wilder v. Apfel*, 153 F.3d 799 (7th Cir. 1998), also supports the second basis, known as the "obduracy exception," for an award. Both cases involved drawn-out proceedings at the Social Security Administration or the agency's refusal on remand to follow court directions.

However, since *Wilder* and *Worzalla*, the Seventh Circuit issued *Briscoe ex rel. Taylor v. Barnhart*, which prohibits this court from awarding benefits outright as a result of the Commissioner's obduracy alone. 425 F.3d 345, 356-57 (7th Cir. 2005). Consequently, this court is bound by *Briscoe* and cannot award Phillips DIB based solely on obduracy, even if it were factually justified. Moreover, this court cannot say unequivocally that the Commissioner has been obdurate, as the second and third ALJs issued lengthy opinions in apparent attempts to comply with the remand instructions—though it strains reason to require a fourth opportunity, after fourteen years of this case bouncing back and forth between the agency and the district court like a pinball, for the Commissioner to determine Phillips's claim fully and correctly.

As stated in *Briscoe*, "an award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability." *Id.* at 356. Here, the burden of proof determines the remedy. Again, at step five the Commissioner bears the burden of coming forward with evidence establishing the existence of a significant number of jobs that the claimant can perform. *Overman*, 546 F.3d at 464; *McKinnie*, 368 F.3d at 911. The Commissioner, after three hearings, did not come forward with sufficient proof and therefore has not met her burden. Even after two hearings at which VEs testified about possible jobs available in the economy, no reliable basis exists for any finding in the

18

Commissioner's favor at step five.  She has failed to prove that jobs exist in the economy for Phillips; thus, an outright award of benefits is appropriate.  Therefore,

IT IS ORDERED that although the ALJ's decision is affirmed as to all steps through step four, the ALJ's decision is reversed as to step five and this case is remanded under sentence four of § 405(g) with instructions that Phillips's application for DIB be granted.

Dated at Milwaukee, Wisconsin, this 18th day of March, 2016.

>BY THE COURT
>
>/s/ C.N. Clevert, Jr.
>C.N. CLEVERT, JR.
>U.S. DISTRICT JUDGE